Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone: (516) 303-0552
spencer@spencersheehan.com

| United States District Court<br>Eastern District of New York | 1:20-cv-04584 |
|---|---|
| Alexander Figueroa, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>         - against -<br><br>Fairlife LLC,<br><br>                              Defendant | Complaint |

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Fairlife LLC ("defendant") manufactures, distributes, markets, labels and sells a vanilla high protein milk drink under its "Core Power" brand ("Product") which has 42 grams of protein.

2. The Product is available to consumers from retail and online stores of third-parties and is sold in sizes including 11.5 OZ.

3. The relevant front label representations include "Vanilla," "Natural Flavors," Elite, cured vanilla beans and vanilla flowers and the brand, "Core Power."



    4.    The representations are misleading because the Product's vanilla taste is provided predominantly, if not exclusively, from sources other than vanilla beans from the vanilla plant and contains less vanilla than consumers expect.

    5.    Consumers have a hierarchy when it comes to the source of a food's flavor.

6. The preference is for foods which get their taste from a characterizing food ingredient, i.e., strawberries in a strawberry shortcake, vanilla in a vanilla pudding.

7. Natural flavors "almost always cost[s] much more than an artificial flavor," so companies and consumers are willing to pay higher prices for the real thing – orange flavor from oranges and vanilla flavor from vanilla, as opposed to orange flavor synthesized from lemons or vanillin (the main flavor molecule in vanilla) derived from wood pulp or petroleum derivatives.[1]

8. Nielsen has reported that 62% of consumers say they try to avoid artificial flavors.[2]

9. Another study by New Hope Network concludes that "71% of consumers today are avoiding artificial flavors."[3]

10. Label Insight determined that 76% of consumers avoid products with artificial flavors.[4]

11. Flavoring ingredients, especially for products labeled as vanilla, are typically the most expensive ingredient in a food, and vanilla has reached record high prices in recent years.[5]

12. Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[6]

13. According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring."

14. Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or

---

[1] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).
[2] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.
[3] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[4] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.
[5] Finbarr O'Reilly, Precious as Silver, Vanilla Brings Cash and Crime to Madagascar, New York Times, Sept. 4, 2018.
[6] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?

for its desirable aroma qualities."[7]

15. Vanilla's unique flavor cannot be duplicated by science due to over 200 compounds scientists have identified, including volatile constituents such as "acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls."[8]

16. An example of the compounds which provide vanilla's flavor are shown in table below, identified through gas chromatography-mass spectrometry ("GC-MS") of a sample of Simply Organic Madagascar Vanilla Extract.

---

[7] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018; Kristiana Lalou Queen of flavors: Vanilla rises above transparency concerns to lead category, Food Ingredients First, Sept. 3, 2019 (describing vanilla as "versatile").
[8] Arun K. Sinha et al., "A comprehensive review on vanilla flavor: extraction, isolation and quantification of vanillin and other constituents," International Journal of Food Sciences and Nutrition 59.4 (2008): 299-326.

Table 2

Sheehan & Associates, P.C., Project #7643-2
Simply Organic Madagascar Pure Vanilla Extract
Production Code: 9274
Concentrated Ether Extract (Water-Soluble Components Washed Out) by GC-MS

Data File = TSQA4027

| MS Scan # | Area Integration | Peak Assignment | Peak Area % |
|---|---|---|---|
| 67 | 16132 | hexanal | 0.0206 |
| 71 | 16235 | butanediol isomer | 0.0207 |
| 81 | 57370 | butanediol isomer | 0.0732 |
| 103 | 36387 | 3-methylbutyric acid | 0.0464 |
| 115 | 33053 | furfural | 0.0422 |
| 141 | 27408 | butanal, diethyl acetal | 0.0350 |
| 262 | 18390 | 3-methylbutanal, diethyl acetal | 0.0235 |
| 281 | 25224 | hexanoic acid | 0.0322 |
| 289 | 2729 | methyl furfural | 0.0035 |
| 299 | 52183 | phenol + trace of benzaldehyde | 0.0665 |
| 349 | 2385 | 1H-pyrrole-2-carboxaldehyde | 0.0030 |
| 379 | 47287 | limonene + benzyl alcohol | 0.0603 |
| 397 | 13835 | heptanoic acid | 0.0176 |
| 409 | 31102 | gamma-hexalactone | 0.0397 |
| 415 | 19338 | p-cresol | 0.0247 |
| 425 | 4470 | hexanal, diethyl acetal | 0.0057 |
| 443 | 287479 | guiaicol | 0.3666 |
| 453 | 5947 | nonanal | 0.0076 |
| 477 | 10000 | phenylethyl alcohol | 0.0128 |
| 496 | 112067 | ? | 0.1429 |
| 505 | 44668 | benzoic acid + octanoic acid | 0.0570 |
| 522 | 4551 | diethyl succinate | 0.0058 |
| 536 | 2461 | ethyl benzoate | 0.0031 |
| 544 | 11769 | 1,2-benzenediol | 0.0150 |
| 555 | 145356 | 2-methoxy-4-methylphenol | 0.1854 |
| 567 | 2537 | methyl salicylate | 0.0032 |
| 587 | 8552 | hydroxy methyl furfural (HMF) | 0.0109 |
| 594 | 5555 | benzeneacetic acid | 0.0071 |
| 605 | 101562 | nonanoic acid | 0.1295 |
| 624 | 6802 | hydroquinone | 0.0087 |
| 631 | 3864 | 4-methoxybenzaldehyde (p-anisaldehyde) | 0.0049 |
| 642 | 6356 | ethyl nonanoate | 0.0081 |
| 653 | 53264 | 4-methoxybenzyl alcohol (p-anisyl alcohol) | 0.0679 |
| 676 | 14481 | cinnamyl alcohol | 0.0185 |
| 685 | 16094 | 3-hydroxybenzyl alcohol | 0.0205 |
| 718 | 12188570 | 3-hydroxybenzaldehyde + 4-ethoxymethylphenol | 15.5440 |
| 751 | 122634 | methyl cinnamte | 0.1564 |
| 759 | 60715743 | vanillin | 77.4301 |
| 796 | 90669 | methyl-p-methoxybenzoate (methyl paraben) | 0.1156 |
| 809 | 2228588 | vanillyl ethyl ether + trace of 4-hydroxy-3-methoxybenzyl alcohol | 2.8421 |
| 832 | 224829 | p-hydroxybenzoic acid | 0.2867 |
| 839 | 37335 | acetovanillone | 0.0476 |
| 892 | 950342 | vanillic acid | 1.2120 |
| 909 | 405589 | 3,4-dihydroxybenzaldehyde | 0.5172 |
| 935 | 82429 | 3,4-dihydroxy-5-methoxybenzaldehyde | 0.1051 |
| 954 | 6212 | ethyl homovanillate | 0.0079 |
| 975 | 78148 | syringealdehyde | 0.0997 |
| 1266 | 14130 | ethyl palmitate | 0.0180 |
| 1518 | 21477 | ethyl linoleate | 0.0274 |
|  | 78413588 | Total | 100.0000 |

17.     While vanillin is the most abundant compound (MS Scan # 759, 77.4301 Peak Area %), numerous other compounds contribute to vanilla's taste in small amounts.

18.     Methyl cinnamate (MS Scan # 751) and p-cresol (MS Scan # 415) provide cinnamon and creamy flavor notes to vanilla.

19.     In early 2018, in response to rampant misleading labeling of vanilla products, flavor industry representatives urged their peers to truthfully label vanilla foods so that consumers are

5

not misled. *See* John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States ("FEMA"), "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake").[9]

20. Hallagan and Drake's analysis began with the vanilla standards, promulgated in the 1960s to end practices which "deprive the consumer of value the product is represented to have, and for which the consumer pays," such as "the widespread and exceedingly serious adulteration of vanilla extracts that are now labeled 'pure.'"[10]

21. By "establishing specific requirements for vanilla extract and other standardized vanilla products," it "insure[d]…all vanilla products are correctly labeled and meet at least minimum standards."[11]

22. The purpose of the vanilla regulations was to "require that food products be labeled accurately so that consumers can determine whether the product is flavored with a vanilla flavoring derived from vanilla beans, in whole or in part, or whether the food's vanilla flavor is provided by flavorings not derived from vanilla beans."[12]

23. According to FEMA, the general flavor regulations do not apply to foods characterized and labeled as "vanilla:"

> It is important to emphasize that these [at 21 CFR Sections 101.22(i)(1), (2) and (3)] regulations apply only to foods that are not subject to a federal standard of identity.
>
> …
>
> These regulations, found at 21 CFR Section 101.22, apply to all foods except for those subject to a federal standard of identity and this has often resulted in some

---

[9] Hallagan and Drake, "There are many current examples of food products that are labeled as 'vanilla' that are clearly mislabeled and therefore in violation of FDA regulations."
[10] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960.
[11] *Id*; New York has adopted all federal regulations for food labeling through its Agriculture and Markets Law ("AGM") and accompanying regulations, Title 1, Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR").
[12] Hallagan and Drake.

6

confusion with the standards governing vanilla flavorings…that have their own requirements for proper labeling as required in FFDCA Section 403.

24. Unfortunately for consumers, the Product's "vanilla" representation is false and misleading because instead of listing vanilla extract, it contains "Natural Flavors."

**INGREDIENTS:** FILTERED LOWFAT GRADE A MILK, CONTAINS LESS THAN 1% OF HONEY, NATURAL FLAVORS, MALTODEXTRIN, SODIUM POLYPHOSPHATE, LACTASE ENZYME, ACESULFAME POTASSIUM, SUCRALOSE, CARRAGEENAN, VITAMIN A PALMITATE, VITAMIN D3.

25. Listing "Natural Flavors" means the vanilla taste is not derived exclusively or even predominantly from vanilla sources because if it did, it would "vanilla extract" or "vanilla flavoring." 21 U.S.C. §343(g) (requiring ingredients to be listed with "the name of the food specified in the definition and standard").

26. This was confirmed through the same analytical testing applied to the Simply Organic vanilla extract.

27. Though testing identified vanillin, other significant vanilla compounds – acetovanillone, cinnamyl alcohol, guiaicol, methyl cinnamate, p-cresol, p-hydroxybenzoic acid, vanillic acid and vanillyl ethyl ether – were detected in minimal amounts, if at all, despite the equipment being capable of detecting them.

28. The presence of vanillin without other vanilla compounds means that the Product

contains vanillin that is not from vanilla beans.

29. Whenever vanillin is used in a food characterized as vanilla, the front label is required to state "artificially flavored." FDA Letter, Margaret-Hanna Emerick, FDA, to Richard Brownell, February 25, 2016.

30. Vanillin used with vanilla is required to be identified as an artificial flavor because (1) consumers will think the food they are consuming has more vanilla than it does, (2) vanillin is potent – one ounce of vanillin is equivalent to the vanillin found in one pound of vanilla beans and (3) vanilla is the most commonly used and expensive flavor ingredient, and if artificial vanillin could be added to it without having to disclose this, consumers would be misled.[14]

31. Analysis revealed the Product also contains or may contain maltol and piperonal.

32. Maltol "can improve overall flavor, potentiate sweetness, increase the sensation of creaminess" and has "a mild flavor and sweet caramel-like odor."[15]

33. Maltol "can help to smooth authentic style vanilla bean flavors" at modest levels.[16]

34. Piperonal contributes "a sweet vanilla olfactory note as well as a sweet, aromatic, vanilla, and benzaldehyde taste" and imparts "vanilla flavors to food and beverage products."[17]

35. These conclusions do not necessarily mean the Product is made without any vanilla, but that it has less vanilla than consumers expect and the vanilla taste is provided by artificial vanilla flavors.

36. The fine print ingredient listing of "Natural Flavors" will not disclose to consumers that (1) the amount of real vanilla in the Product is at most, *de minimis* and (2) the vanilla taste is

---

[14] See 21 C.F.R. § 169.180(b) and 21 C.F.R. § 169.181(b).
[15] Lisa Kobs, The Sweet Taste of Success – Part Two, Food Ingredients Online, 1998; Maltol, UL Prospector, Bryan W Nash & Sons Ltd.
[16] John Wright, Flavor Bites: Maltol, Perfumer & Flavorist, June 2020.
[17] C. B. Gnadinger, "Piperonal in Vanilla Extract." Industrial & Engineering Chemistry 18.6 (1926): 588-589; Piperonal, Moellhausen S.p.A., UL Prospector.

provided by artificial vanillin.

37. Representing the Product as "Vanilla" directly above "Natural Flavors" without qualifying terms which truthfully disclose the artificial vanilla flavors is misleading, because it gives the impression the vanilla taste is provided by vanilla beans from the vanilla plant.

38. Because "Natural Flavors" fails to qualify or disclaim "Vanilla," consumers will expect the flavor to come entirely from the characterizing food ingredient.

39. Consumers, including Plaintiff, expect the Product's vanilla taste to only come from vanilla because the front label lacks any qualifying terms like "flavored," "other natural flavors" or "artificially flavored."

40. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

41. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

42. The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

43. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

44. As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $3.29 per 11.5 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

Jurisdiction and Venue

45. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

46. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

47. Plaintiff Alexander Figueroa is a citizen of New York.

48. Defendant Fairlife LLC, is a Delaware limited liability company with a principal place of business in Chicago, Cook County, Illinois and is a citizen of Illinois and no member is citizen of New York.

49. "Minimal diversity" exists because plaintiff Alexander Figueroa and defendant are citizens of different states.

50. Upon information and belief, sales of the Product in New York exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

51. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of plaintiff to purchase the Product and the misleading representations and/or their recognition as such.

52. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Parties

53. Plaintiff Alexander Figueroa is a citizen of Brooklyn, Kings County, New York.

54. Defendant Fairlife LLC is a Delaware limited liability company with a principal

place of business in Chicago, Illinois, Cook County and is a citizen of Illinois and at least one member of defendant is not a citizen of New York.

55. During the relevant statutes of limitations, plaintiff purchased the Product within his district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

56. Plaintiff Alexander Figueroa purchased the Product on one or more occasions and at one or more locations, including Walgreens, 462 5th Ave, Brooklyn, NY 11215 during 2020.

57. Plaintiff bought the Product at or exceeding the above-referenced price because he liked the product for its intended use and relied upon the front label claims to expect its taste only came from the identified front label ingredient of vanilla and that the natural flavors were natural vanilla flavors.

58. Plaintiff was deceived by and relied upon the Product's deceptive labeling.

59. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

60. The Product was worth less than what Plaintiff paid for it and he would not have paid as much absent Defendant's false and misleading statements and omissions.

61. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's components.

## Class Allegations

62. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

63. Plaintiff seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

64. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

65. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

66. Plaintiff is an adequate representatives because his interests do not conflict with other members.

67. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

68. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

69. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

70. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350,
(Consumer Protection Statute)

71. Plaintiff incorporates by reference all preceding paragraphs.

72. Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

73. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

74. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

75. The amount and proportion of the characterizing component, vanilla, has a material

bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla" coupled with the term "natural flavors," without more.

76. The ingredient list designation of "natural flavors" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does include vanillin from non-vanilla sources, maltol and piperonal.

77. The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient and the term "natural flavors" fails to disclose the presence of non-vanilla, artificial vanilla flavors.

78. The front label gives the impression the Product has more of the characterizing ingredient than it does.

79. Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

80. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

81. Plaintiff incorporates by reference all preceding paragraphs.

82. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

83. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla" coupled with the term "natural flavors," without more.

84. The ingredient list designation of "natural flavors" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does include vanillin from non-vanilla sources, maltol and piperonal.

85. The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient and the term "natural flavors" fails to disclose the presence of non-vanilla, artificial vanilla flavors.

86. The front label gives the impression the Product has more of the characterizing ingredient than it does.

87. Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

88. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

89. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

90. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

91. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

92. Plaintiff incorporates by reference all preceding paragraphs.

93. The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed

14

substantive, quality, compositional and/or environmental which they did not.

94. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

95. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla" coupled with the term "natural flavors," without more.

96. The ingredient list designation of "natural flavor" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does include vanillin from non-vanilla sources, maltol and piperonal.

97. The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient and the term "natural flavors" fails to disclose the presence of non-vanilla, artificial vanilla flavors.

98. The front label gives the impression the Product has more of the characterizing ingredient than it does.

99. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

100. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

101. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

102. The Product did not conform to its affirmations of fact and promises due to

defendant's actions and were not merchantable.

103. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

104. Plaintiff incorporates by reference all preceding paragraphs.

105. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

106. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla" coupled with the term "natural flavor," without more.

107. The ingredient list designation of "natural flavors" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does include vanillin from non-vanilla sources, maltol and piperonal.

108. The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient and the term "natural flavors" fails to disclose the presence of non-vanilla, artificial vanilla flavors.

109. The front label gives the impression the Product has more of the characterizing ingredient than it does.

110. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

111. Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

### Unjust Enrichment

112. Plaintiff incorporates by reference all preceding paragraphs.

113. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and
6. Other and further relief as the Court deems just and proper.

Dated:   September 26, 2020

                                                       Respectfully submitted,

                                                       Sheehan & Associates, P.C.
                                                     /s/Spencer Sheehan

                                                                                               _____

                                                       Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-04584
United States District Court
Eastern District of New York

Alexander Figueroa, individually and on behalf of all others similarly situated,

                              Plaintiff,

    - against -

Fairlife LLC,

                              Defendant

---

Complaint

---

```
            Sheehan & Associates, P.C.
             60 Cuttermill Rd Ste 409
             Great Neck NY 11021-3104
                Tel: (516) 303-0552
                Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: September 26, 2020

                                                                  /s/ Spencer Sheehan
                                                                    Spencer Sheehan